**In the Matter of J.K.A., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. C14–92–00897–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 29, 1993.

Rehearing Denied May 27, 1993.

William B. Connally, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

CANNON, Justice.

Appellant J.K.A. was adjudicated to have engaged in delinquent conduct. At a disposition hearing he was committed to the Texas Youth Commission ("TYC") but given probation. He violated a rule of probation, and the State moved to modify the disposition. J.K.A. appeals the modified disposition. We affirm.

### Facts

On September 18, 1991, a juvenile court found that J.K.A. had engaged in delinquent conduct, i.e., burglary. The court committed him to the TYC but suspended the commitment. The court placed him in the custody of his mother under the supervision of the Juvenile Probation Department and rules of probation for one year.

On February 13, 1992, J.K.A. was caught with a gun at school. On March 10, 1992, the State filed a petition to modify disposition alleging violation of a rule of probation and requesting the court to enter further custody orders. On May 11, 1992, the trial court held a hearing. Probation rule four specified that J.K.A. not violate any law of the State. J.K.A. signed a stipulation of evidence admitting that he violated that rule by committing the weapons offense. The trial court modified the prior disposition by revoking J.K.A.'s probation and committing him to the TYC.

J.K.A. did not contest the revocation of probation or his commitment to the TYC. However he moved to amend the wording of the court's orders to clarify that the court did not adjudicate J.K.A. guilty of *new* felonious delinquent conduct for the weapons offense. Rather he wanted the orders to reflect only that J.K.A. had vio-

**60**

lated a reasonable and lawful order of the court, i.e., a rule of probation of the prior disposition order. The trial court denied J.K.A.'s motion to amend, and he appeals.

### Complaint on Appeal

In three points of error J.K.A. complains that the trial court erred in entering an adjudication of delinquent conduct for a felony weapons violation. He argues that there was no petition to adjudicate delinquent conduct, only a petition to modify the prior disposition. Furthermore, he maintains that there was no evidence of a weapons offense, only evidence of a violation of a court order.

### Construing the Orders

J.K.A.'s basic complaint is that the trial court's orders adjudicated him guilty of a felony weapons offense. Therefore, at the threshold, we must ask whether the trial court's orders did so adjudicate. We hold they did not.

The trial court used two orders to modify J.K.A.'s prior disposition: (1) a judgment/order modifying disposition and (2) an order revoking probation. The first order served to enter the finding upon which the modification of disposition was based. The second order served as the implementing order to declare the modified disposition.

### The Judgment/Order Modifying Disposition

The judgment/order modifying disposition included in its *recital* that, "[T]he Court ... finds beyond a reasonable doubt that [J.K.A.] ... engaged in delinquent conduct and violated a reasonable and lawful order of the Court, in that [J.K.A.] committed the OFFENSE(S) OF: VIOLATION OF PROBATION * UNLAWFUL CARRYING WEAPONS (FIREARM) ON SCHOOL PREMISES...."

"Recitals ..., except those showing the full name of the parties, etc. and those stating for and against whom judgment is rendered, are not sanctioned by [Rule 306] nor given place or function in a judgment." *Roberson Farm Equip. Co. v. Hill*, 514 S.W.2d 796, 801 (Tex.Civ.App.—Texarkana 1973, writ ref'd n.r.e.); Tex.R.Civ.P. 306; 47 Tex.Jur.3d *Judgments* § 35 (1986). The mere reasons for a determination form no part of the judgment itself. *Atwood v. Humble Oil & Refining Co.*, 239 S.W.2d 412, 414 (Tex.Civ.App.—El Paso 1950, *rev'd on other grounds*, 150 Tex. 617, 244 S.W.2d 637 (1951).

The *decretal* portion of the order stated: "IT IS THEREFORE CONSIDERED AND ADJUDGED BY THE COURT that [J.K.A.] has violated a reasonable and lawful order of the Court within the meaning of Section 54.05(f) Texas Family Code...."

Therefore we find that the operative language of the order adjudged only that J.K.A. violated a reasonable and lawful order of the court. This violation does constitute delinquent conduct under Tex.Fam. Code Ann. § 51.03(a)(2) (Vernon Supp.1993) and is the delinquent conduct referred to in the recital portion of the order.

The recital portion of the order states that the underlying offense constituting the violation of the rule of probation was a weapons offense. Section 54.05(i) of the Family Code requires that "the order" state with specificity the reason for the modification to the prior disposition. *Id.* § 54.05(i). But the judgment/order modifying disposition, as used here by the juvenile court, is not the order implementing the modification to the prior disposition. The order revoking probation does that. Therefore the specific facts of the weapons offense are not statutorily required in the judgment/order modifying disposition. While such specificity is not prohibited, its inclusion can lead to confusion over what delinquent conduct was actually adjudicated. In any event we find that the description of the weapons offense in the recital portion of the judgment/order modifying disposition does not equate to the entering of a judgment adjudicating J.K.A. guilty of felonious delinquent conduct.

### The Revocation of Probation Order

The recital portion of the order revoking probation states in pertinent part:

"[J.K.A.] was adjudged to have *engaged in delinquent conduct....*" We interpret this to refer to J.K.A.'s violation of the rule of probation. The decretal portion of the order does not mention any new adjudication of delinquent conduct.

This order also recites that, "[J.K.A.'s] thumbprint is affixed to this order, in compliance with Section 54.04(j) of the Texas Family Code." Section 54.04(j) requires a thumbprint on a disposition order when a youth has been adjudged guilty of felonious delinquent conduct. *Id.* § 54.04(j). Since this order revoking probation relates back to the prior adjudication of felonious burglary, the thumbprint was appropriate. The presence of the thumbprint does not establish that the trial court adjudged J.K.A. guilty of *new* felonious delinquent conduct.

As used by the juvenile court, this probation revocation order is the order contemplated in § 54.05(i)'s requirement for a specific description of the reason for modifying the disposition. While no such description was included in this order, a specific reference to the weapons offense was contained in the recital portion of the judgment/order modifying disposition. Therefore there is no doubt that J.K.A. was fully aware of the reason for the modified disposition.

In sum we find that neither the judgment/order modifying disposition nor the order revoking probation adjudicates J.K.A. guilty of any new delinquent conduct other than violation of a reasonable and lawful court order, i.e., a breach of a rule of probation of the prior disposition order.

### What Process is Due?

While J.K.A. would welcome our interpretation of the trial court's orders, he argues further that the trial court was not authorized to adjudicate J.K.A. guilty of even the violation of the court order. He maintains that every "adjudication" must be based on a petition to adjudicate and resolved by a separate, full due-process adjudication hearing under § 54.03. We disagree.

§ 51.03.   Delinquent Conduct;   ...

(a) Delinquent conduct is:

(1) conduct, other than a traffic offense, that violates a penal law of this state punishable by imprisonment or by confinement in jail;

(2) conduct that violates a reasonable and lawful order of a juvenile court entered under Section 54.04 or 54.05 of this code ... or

(3) conduct that violates the laws of this state prohibiting driving while intoxicated or under the influence....

*Id.* § 51.03(a).

"A child may be found to have engaged in delinquent conduct ... only after an adjudication hearing conducted in accordance with the provisions of this section." *Id.* § 54.03(a) "At the beginning of the adjudication hearing, the juvenile court judge shall explain to the child and his parent, guardian, or guardian at litem: (1) the allegations made against the child; (2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding; (3) the child's privilege against self-incrimination; (4) the child's right to trial and to confrontation of witnesses; (5) the child's right to representation by an attorney ...; and (6) the child's right to trial by jury." *Id.* § 54.03(b). "Trial shall be by jury unless jury is waived...." *Id.* § 54.03(c).

■   Therefore, under the plain language of § 54.03, we begin with the general proposition that a finding of delinquent conduct must be arrived at through an adjudication hearing that provides the full due-process safeguards outlined in that section. The general rule applies unless excepted to by other sections of the code.

■   Once a court has found delinquent conduct through an adjudication hearing, then the court must hold a separate disposition hearing. Since the only issue at a disposition hearing is the proper corrective action to be imposed, there is no need for

any new adjudication of delinquent conduct. *See id.* § 54.04.

■ The situation is more complicated when the State seeks to modify a prior disposition. As in the case at bar, a youth who received a probated commitment to the TYC may violate a rule of probation or commit a new offense. When a rule of probation proscribes a youth's violation of any law of the State, a breach of the law also violates the rule of probation. In that case the State may seek to adjudicate the youth guilty of violating a rule of probation or of violating the underlying State law. But the due-process requirements vary depending on which route the State takes.

Violation of Court Order

■ When the State bases its motion to modify on a violation of a court order (rule of probation), then the prior disposition can be modified without any new "adjudication of delinquent conduct" *per se*:

> (f) A disposition based on a finding that the child engaged in delinquent conduct may be modified so as to commit the child to the Texas Youth Commission if the court after a hearing to modify disposition finds beyond a reasonable doubt that the child violated a reasonable and lawful order of the court.

*Id.* § 54.05(f).
Section 54.05(f) does not allude to any separate adjudication hearing or require any *new* "adjudication of delinquent conduct." *Id.*

J.K.A. argues that § 54.05(d) dictates a separate adjudication hearing, even when the motion to modify is based on a mere violation of a court order:

> (d) ... When the petition to modify is filed under Section 51.03(a)(2) of this code, the court must hold an *adjudication hearing* and make an affirmative finding prior to considering any written reports under Subsection (e) of this section.

*Id.* § 54.05(d) (emphasis added).
Section 54.05(e) goes on to say:

> (e) After the *hearing on the merits or facts*, the court may consider written re-

ports from probation officers, professional court employees, or professional consultants in addition to the testimony of other witnesses....

*Id.* § 54.05(e) (emphasis added).

We find that § 54.05(d) does not mandate a separate, full due-process adjudication hearing under § 54.03. First, the "adjudication hearing" under § 54.05(d) is nothing more than the "hearing on the merits or facts" of § 54.05(e). This "hearing on the merits or facts" need only comply with the due-process requirements of § 54.05; for example, generally no jury is allowed except under the circumstances specified under §§ 54.05(f), (g), or (h), and only reasonable notice need be given. However the reduced due-process criteria only apply when the State merely seeks to find that a youth has engaged in § 51.03(a)(2) delinquent conduct, i.e., "conduct that violates a reasonable and lawful order of a juvenile court entered under Section 54.04 or 54.05 of this code...." *Id.* §§ 51.03(a)(2) & 54.05(d). Our second reason for holding that § 54.05(d) does not invoke a full due-process adjudication hearing is that § 54.05(d) must be read along with § 54.05(f). Section 54.05(f) empowers the court to modify a disposition via a "hearing to modify disposition" when the modification is based on a violation of a "reasonable and lawful order of the court." *Id.* § 54.05(f). Section 54.05(d) merely divides this hearing to modify disposition into (1) a fact-finding, adjudicative phase to establish the reason for modifying the disposition and (2) a data-gathering phase to assist in formulating the appropriate disposition. *See id.* § 54.05(d) & (e).

We therefore hold that the trial court was not required to conduct a full due-process adjudication hearing to find that J.K.A. violated a reasonable and lawful order of the court, i.e., violated a rule of probation. The trial court's judgment/order modifying disposition adjudicated that J.K.A. violated a court order, neither a felony nor a misdemeanor. Therefore the somewhat reduced due-process safeguards of § 54.05 (as compared to § 54.03) were adequate.

## Violation of Substantive Law

██ The State may base its motion to modify on a violation of the substantive law underlying the rule of probation. Nothing in § 54.05 suggests that a youth is not entitled to a full § 54.03 due-process adjudication hearing when a motion to modify is based on an adjudication of delinquent conduct under § 51.03(a)(1) or (3), that is, a violation of a penal law punishable by imprisonment or jail or a law prohibiting driving while intoxicated or under the influence. Section 54.05(g) specifically requires a § 54.03 adjudication hearing whenever the State (1) seeks to modify a youth's prior disposition that was based on conduct indicating a need for supervision and (2) seeks to commit that youth to the TYC. *Id.* § 54.05(g). Sections 54.05(f) and (h) specify that a youth is entitled to a jury on the issue of violation of a court order when he is in danger of a determinate sentence or transfer to the institutional division of the Texas Department of Criminal Justice. *Id.* §§ 54.05(f) & (h). But § 54.05 is silent on motions to modify based on new adjudications of delinquent conduct under § 51.-03(a)(1) & (3). Therefore, in those situations, the general provisions of § 54.03 apply. A youth is entitled to a full § 54.03 adjudication hearing with its enhanced due-process safeguards including the right to a jury.

## Impact on Liberty Interest

██ A youth's liberty interest is directly impacted by adjudications of delinquent conduct. They affect the youth's classification at the TYC and can be used by the State to enhance a sentence in a subsequent criminal trial. It is therefore important that court orders specify with exactness the offense constituting the adjudicated delinquent conduct. Likewise it is important that the appropriate level of due-process safeguards be afforded a youth depending on the seriousness of the charged offense and the potential impact on his liberty interest.

The case of J.K.A. illustrates the liberty interest impact of a misreading of a trial court's orders modifying disposition.

Assume that the TYC reads the trial court's orders as adjudicating J.K.A. guilty of new felonious delinquent conduct, i.e., the weapons violation. The TYC bases its determination of a youth's minimum length of stay and restriction level on his classification. 37 TEX.ADMIN.CODE § 85.21(b)(2) (West Supp.1993). The classification depends in part on the classifying offense. *Id.* The classifying offense is the most serious relevant offense. *Id.* § 85.23(b)(1). A relevant offense is the committing offense and any offenses for which the youth was on probation at the time of the committing offense. *Id.* The committing offense is the most serious of the offenses found at the youth's most recent judicial adjudication. *Id.* § 85.23(b)(2).

If the TYC reads the trial court's orders modifying disposition as adjudicating J.K.A. guilty of the weapons violation, then his committing offense would be a felony. This felony would be his most serious relevant offense and, therefore, his classifying offense. With a felony classifying offense, and having been found to have committed at least one felony in each of at least three separate and distinct due-process hearings, J.K.A. would be classified as a chronic serious offender. *Id.* § 85.23(c)(1)(D). He would incur a minimum length of stay of six months and be highly restricted. *Id.* § 85.21(b)(3)(H).

On the other hand, if the TYC interpreted the orders modifying the disposition as merely finding that J.K.A. had violated a court order, then his committing offense would be neither a felony nor a misdemeanor. His most serious relevant offense, and therefore his classifying offense, would be his prior burglary delinquent conduct. He would not have been adjudicated guilty of three prior felonies. Therefore he would not be classified as a chronic serious offender and would experience a reduced minimum length of stay and less restriction.

It may very well be that J.K.A. would benefit from the longer commitment to the TYC and the greater restriction. But J.K.A. is entitled to due-process safeguards appropriate to the seriousness of the al-

leged offense and the degree of infringement on his liberty interest. If the State wants an adjudication of felonious delinquent conduct with its serious classification implications, it must afford an opportunity for a full § 54.03 adjudication hearing. On the other hand, if the State merely wishes to modify a disposition by obtaining a finding that the youth violated a reasonable and lawful order of the court, then a § 54.05 hearing to modify disposition is all that is required. *See In the Matter of S.H.,* 846 S.W.2d 103, 106 (Tex.App.—Corpus Christi 1992, n.w.h.).

■ We also note that adjudications of delinquent conduct for felony offenses can be used in the punishment phase of criminal trials up to five years after the adjudication. TEX.CODE CRIM.PROC. art. 37.07 § 3(a) (Vernon Supp.1993). This is further incentive to ensure that proper due-process safeguards are provided when the State seeks a finding of felonious delinquent conduct.

### Conclusion

In sum we hold that the trial court's orders did not adjudicate J.K.A. guilty of engaging in the delinquent conduct of a weapons violation. The orders merely adjudicated him guilty of violating a reasonable and lawful court order. The judgment was consistent with the pleadings and evidence. The hearing on the merits and facts leading to that finding was as contemplated under § 54.05(f). J.K.A.'s thumbprint was properly affixed to the trial court's probation revocation order because that order related back to the prior adjudication of felonious delinquent conduct for burglary. The descriptive text in the judgment/order modifying disposition that detailed the nature of the underlying weapons offense was unnecessary and a potential source of confusion. The descriptive text on the weapons offense was required in the probation revocation order under § 54.05(i) because that was the actual order implementing the modification of disposition.

We overrule J.K.A.'s points of error. There being no reversible error, we affirm

the judgment below as construed by our opinion.